**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GINA ADLERSFLUEGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-02494-AGF |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Gina Adlersfluegel is not disabled,

and thus not entitled to disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401-434.  For the reasons set forth below, the decision of the

Commissioner will be affirmed.

**BACKGROUND**

Plaintiff was born on January 5, 1961 and completed high school in 1978.  Tr.

153, 158.  From 1996 to 2015, she worked in website development, customer service, and

clerical positions.  Tr. 165.  She filed an application for disability insurance benefits on

February 5, 2017, alleging a disability beginning November 5, 2015 due to depression

and anxiety.  Tr. 70, 140, 157.  Her application was denied at the administrative level (Tr.

75), and she thereafter requested a hearing before an Administrative Law Judge ("ALJ")

(Tr. 82).

On October 17, 2018, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Ms. Brenda Young, a vocational expert ("VE").  Tr. 24-57.  By decision dated December 3, 2018, the ALJ found that Plaintiff had the following medically determinable impairments: bilateral tenosynovitis, left trigger thumb, obesity, hypothyroidism, hyperlipidemia, hypertension, restless leg syndrome, degenerative changes to the right knee, depression, and anxiety disorder.  Tr. 12.  However, the ALJ determined that Plaintiff's impairments, singularly or in combination, did not significantly limit her ability to perform basic work-related activities for 12 consecutive months, so her impairments were not severe.  As such, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council, which denied review on August 21, 2019.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency decision now under review.  Plaintiff asserts that the administrative record lacks substantial evidence supporting the ALJ's determination that her mental impairments are not severe.  As relevant to the issue before this Court, the record before the ALJ can be summarized as follows.[1]

**Treatment Records**

Between February and April 2015, Plaintiff had four counseling sessions with Ms. Rebecca Turay, MSW, LCSW.  Plaintiff presented for depression.  At the time, she was

---

[1]     Plaintiff does not assert a claim for disability based on her physical impairments or challenge the ALJ's findings in that regard.   The Court need not discuss or review the ALJ's decision in that regard.

employed full-time and did not like her job because it was stressful.  The goal of counseling was to help Plaintiff work toward better employment, improve her self-worth, and learn to trust others.  Plaintiff considered herself efficient at her job and was interested in applying for a promotion but was hesitant to apply due to low self-esteem. Plaintiff did not report an inability to focus or perform her work.  Tr. 285.

Between February 24, 2015, and March 25, 2016, Plaintiff had five mental health examinations with Dr. Raafea Malik at Psych Care Consultants.  Tr. 289-298.  She was consistently well-groomed and cooperative with appropriate affect, logical thought, normal cognition, intact judgment and insight, normal reasoning, intact concentration and attention, and intact executive functioning.  Her mood was normal except for two visits where it was noted dysthymic and sad.  Treatment notes indicate that Plaintiff was anxious and depressed about her job.  Tr. 289, 293, 295.  She was initially diagnosed with major depressive disorder, single episode, moderate.  Tr. 289.  Dr. Malik later added diagnoses of social anxiety disorder and generalized anxiety disorder.  Tr. 295.

Beginning in November 2016, Plaintiff continued her mental health treatment with Dr. Roomana Arain, also at Psych Care Consultants.  On November 17, 2016, she reported that her medications were effective, but she continued to feel depressed and anxious.  She complained of distractibility and disorganization.  She denied feeling irritable or having panic attacks.  Her mood and other markers were normal and intact, except that her attention and concentration were distracted.  Dr. Arain modified Plaintiff's depressive disorder diagnosis to recurrent and severe.  Tr. 300.  Plaintiff was to seek individual therapy.  Tr. 299-301.

On January 18, 2017, Plaintiff saw Dr. Arain for a follow-up visit and reported that she had been fired from her job.  She felt depressed and anxious but denied having irritability or panic attacks.  Plaintiff's mood was depressed with blunt affect and distracted attention and concentration.  Other markers remained normal and intact. The diagnosis and plan for individual therapy remained unchanged.  Tr. 302-303.

On March 17, 2017, Plaintiff was feeling fine and felt that her medications were effective.  Her mood was better and her affect bright.  Other markers were normal and intact except that she remained distracted.  The diagnosis and plan for therapy remained the same.  Tr. 304-5.

On June 16, 2017, Plaintiff reported feeling fine and not depressed but still having some anxiety, as she was overwhelmed with her financial situation and applying for disability.  She reported being disorganized and distracted.  Her mental health exam revealed normal and intact markers, with a better mood, brighter affect, and intact attention and concentration.  Her diagnosis remained the same.  Plaintiff was encouraged to seek individual therapy, increase physical activity, make healthier food choices, and practice good sleep hygiene.  Tr. 355-356.

On September 18, 2017, Plaintiff again reported feeling fine, that her medications were effective, and that she was anxious but not depressed.  Her markers were unchanged.  She had not sought counseling.

On December 6, 2017, Plaintiff's visit was largely the same.  Markers were unchanged, her medications were effective.  She decreased her Prozac. Recommendations remained the same.

4

On March 6, 2018, Plaintiff reported feeling anxious, depressed, disorganized, and distracted.  She had not worked in two years and was still waiting for disability.  She reported being isolated, that it helps to be around intelligent, open-minded people, but that she can't tolerate ignorant people.  Her mood was depressed and her affect blunt, but other markers were noted normal and intact, including attention and concentration.  Tr. 361-362.  Recommendations remained for individual counseling, increased activity, healthier nutrition, and sleep hygiene.

On April 17, 2018, Plaintiff reported feeling the same but more organized since taking Deplin.  She was awaiting her disability hearing, receiving some money as a result of her work separation, using her savings, procrastinating on chores, and feeling overwhelmed with her environment.  Her mood was depressed and her affect dramatic.  Her other markers were normal and intact, including attention and concentration.  Recommendations remained the same. Tr. 364-365

On July 10, 2018, Plaintiff reported feeling the same but still depressed and anxious.  She denied having any irritability or panic attacks.  She had not pursued individual therapy.  Recommendations remained the same.  Tr. 366-367.

**Plaintiff's Function Report and Testimony**

In her function report dated March 12, 2017 (Tr. 176-183), Plaintiff reported the following.  She has generalized and social anxiety; she avoids social interaction; she has difficulty concentrating, making decisions, and staying motivated; and she cries for no reason.  She sits on the couch with her laptop and her dog and reads emails, Facebook, and articles on the internet.  She feeds the dog, eats frozen dinners and protein bars, and

watches TV.  She does not need reminders for personal grooming or to take medication. She does laundry and can clean but "just [doesn't] care."  She can drive and shop for groceries and sometimes shops in thrift stores or online for recreation.  She is uncomfortable with people and prefers to be alone.  She does not like having to talk on the phone at her job.

In her testimony before the ALJ on October 17, 2018 (Tr. 25-49), Plaintiff added the following.  At her last job, she was a "general clerk two," which involved verifying documents in applications for Obamacare.  Plaintiff began experiencing difficulties in this position when new responsibilities were added such that she had to talk on the phone and type on a computer at the same time.  Her previous jobs involved scanning medical records, telephonic customer service for a printing company, and desktop publishing. Plaintiff stopped going to work due to emotional outbursts, lack of energy, loss of sleep, depression, loss of concentration, and pain in her hands, leg, and back.  Tr. 38.  Plaintiff reported that her concentration is poor.  She is uncomfortable in crowds, does not have friends, and talks to her family about once a week.  She is able to take care of her grooming.  She does not do housework and mostly uses paper plates. She washes dishes every three months or so.  She does her laundry and takes out the trash.  She goes to the grocery store every week to 10 days.  She traveled to Amsterdam in 2016.  She spends a total of about five hours a day on her computer.  She does not need reminders to bathe or dress.  She typically changes her clothes once a week and bathes once a month.  She has crying spells every day.

**State Agency Opinion**

In an opinion dated April 25, 2017, state agency psychologist Dr. Marc Maddox concluded that Plaintiff's impairments were non-severe.  Dr. Maddox observed "no obvious psych-related difficulties evident during the teleclaim."  Tr. 66.  Upon review of Plaintiff's mental health treatment records, Dr. Maddox concluded that Plaintiff exhibited "no more than mild limits."  Dr. Maddox noted that Plaintiff had not sought counseling and had never been hospitalized for her mental health.[2]  He noted that, despite her claimed difficulties, Plaintiff was capable of normal activities of daily living, her cognition and memory were always noted as normal, she presents well-groomed and logical, and she responded to medication.  Overall, Dr. Maddox concluded that the objective evidence did not support Plaintiff's claim of a severe impairment.  Tr. 67.

**The ALJ's Decision (Tr. 10-19)**

By decision dated December 3, 2018, the ALJ found that Plaintiff's mental impairments were not severe and thus she was not disabled.  Tr. 10-19.  As stated above, the ALJ acknowledged that Plaintiff had medically determinable impairments with respect to depression and anxiety.  Tr. 12.  However, the ALJ concluded that these impairments did not significantly limit her ability to perform basic work-related activities for 12 consecutive months, so her impairments were not severe.  Tr. 12.

The ALJ's decision provides a detailed inventory of Plaintiff's self-reported

---

[2]     In her function report, Plaintiff references a psychiatric hospitalization in 1979.  Tr. 183.  Her more recent records, relevant to the period in question here, do not reflect any recent inpatient treatment or hospitalization.

7

circumstances relating to her anxiety and depression. Tr. 13-14.  To summarize, Plaintiff reported that she is socially withdrawn; she struggles to concentrate; she has trouble with instructions; she has crying spells; she took leave from her last job when she was expected to multi-task (typing on a computer while talking on the phone); she is capable of daily activities but unmotivated to do them (e.g., bathe, cook, clean); she can drive and shop for groceries; she takes care of her dog; she can handle her finances; her memory is average to good; she spends about five hours per day on her computer reading social media and other content; she went to the Netherlands for her birthday in 2016; she has declined to participate in therapy except for four sessions in 2015.   The ALJ found that, while Plaintiff's impairments could be expected to produce her reported symptoms, Plaintiff's account of the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record.  Tr. 14.

Referring to Plaintiff's treatment records, the ALJ noted that Plaintiff has been diagnosed with major depressive disorder and social and general anxiety disorders.  She sees a psychiatrist and takes Cymbalta, Fluoxetine, Ativan, and Ambien.  The ALJ noted that Plaintiff met with a counselor, Rebecca Turay, for four sessions in early 2015. Tr. 16.  Ms. Turay reported that Plaintiff presented for depression and expressed dissatisfaction with her job; however, Plaintiff did not indicate an inability to focus or perform her work.  Tr. 285.  The ALJ did not rely on Ms. Turay's statement as a medical opinion but considered it relevant to assessing the severity of Plaintiff's impairments.  Tr. 17.

Next, the ALJ considered the medical evidence in the context of "paragraph B"

8

criteria.  Specifically, mental impairments are not deemed disabling unless functional limitations known as "paragraph B criteria" are present, meaning a claimant has one extreme or two marked functional limitations in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).[3]  In applying "paragraph B" criteria here, the ALJ found that Plaintiff had only mild limitations in all four categories.  Tr. 17-18.  With respect to the first criterion, the ALJ noted that, although Plaintiff reported some problems with instructions and organization, Plaintiff can handle her finances and had average intelligence and intact memory, and no evidence suggested difficulties with understanding, remembering, or applying information.  Tr. 17.  On the second criterion, the ALJ acknowledged Plaintiff's social isolation and anxiety but noted that Plaintiff was capable of personal interaction; her treatment records reflect that she was pleasant and cooperative, she traveled abroad, and she appreciated intelligent people. Tr. 17.  On the third criterion, the ALJ observed that, though some treatment records indicated distractibility, others reflected intact attention, and Plaintiff spent several hours per day on her computer, belying an inability to focus.  On the fourth criterion, though Plaintiff experienced some crying spells, she was able to manage herself, had intact judgment in treatment, and had never been referred for intensive treatment or

---

[3]      These criteria became effective January 17, 2017, before Plaintiff filed her claim.

hospitalization for her mental health.[4]  Tr. 18.

The ALJ also referred to the opinion of the state agency examiner, Dr.  Maddox,
who found only mild limitations in Plaintiff's mental functioning.  Tr. 66-67.  The ALJ
found Dr. Maddox's opinion consistent with other evidence in the record and gave it
great weight.  Tr. 18.  Ultimately, the ALJ concluded that the evidence demonstrated only
mild impairments that did not significantly limit Plaintiff's ability to work.  Tr. 18.
Accordingly, the ALJ found that Plaintiff is not disabled under the Act.

**The Appeals Council's Decision (Tr. 1-3)**

On January 8, 2019, Plaintiff filed a request for review of the ALJ's decision in
the Appeals Council.  Tr. 138-139, 224-225.  At this stage, Plaintiff sought to introduce
two "new" exhibits not included in the record before the ALJ.  Tr. 224.  The first, dated
August 27, 2014, was a letter by Dr. Malik (Plaintiff's psychiatrist) addressed to a human
resources professional at Plaintiff's workplace, stating that Plaintiff was being treated for
depression and anxiety and should be transferred out of the call center to a less stressful
environment.  Tr. 61.  The second, dated August 4, 2015, was the employer's form

---

[4]      When Paragraph B criteria are not satisfied, the relevant listings also have
additional functional criteria known as "Paragraph C criteria," used to evaluate "serious
and persistent" mental disorders.  Paragraph C criteria require a medically documented
history of the existence of the disorder for at least two years, with evidence of (1) medical
treatment, mental health therapy, psychosocial support, or a highly structured setting that
is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2)
marginal adjustment, meaning a minimal capacity to adapt to changes in one's
environment or to demands that are not already part of one's daily life.  In referring to the
lack of inpatient care on the present record, the ALJ confirmed that paragraph C criteria
are not present here.

medical statement, completed by Dr. Malik, indicating that Plaintiff suffers from severe anxiety and depression, she has difficulty concentrating and communicating, these limitations will last for at least 12 months, and she should be transferred out of the call center to a less stressful setting, but she did not require a leave of absence.  Tr. 58-60.  In her brief before the Appeals Council, Plaintiff also cited to psychiatric visits in the original record confirming her anxiety, depression, distractibility, and disorganization, and reflecting changes in her medication to address these conditions.  Based on this evidence, Plaintiff argued that the ALJ's decision should be reversed.

On August 21, 2019, the Appeals Council denied Plaintiff's request for review, finding no abuse of discretion, error of law, or lack of substantial evidence supporting the ALJ's decision.  The Council declined to accept Dr. Malik's statements as additional evidence.  It explained that a claimant must show good cause why existing evidence was not submitted earlier and must also show a reasonable probability that the evidence would change the outcome.  The Council found no such probability in Dr. Malik's statements.  Tr. 1-2.  However, the Council did accept an email, dated April 2019, from Plaintiff to her lawyer regarding her mental state, medications, and desire to change doctors.  Tr. 4, 226-227.

**Parties' Arguments**

In her brief before this Court (ECF No. 13), Plaintiff argues that (1) the Appeals Council committed reversible error by rejecting Plaintiff's "new" evidence and (2) the record does not support the ALJ's finding that Plaintiff's mental impairments are not severe.  Plaintiff implies that the agency's consideration of Plaintiff's supplement on

11

remand may result in a different outcome.  Plaintiff asks the Court to reverse the decision and remand the case for a new hearing.

In his response (ECF No. 16), the Commissioner asserts that there is ample evidence in the record to support the ALJ's finding that Plaintiff's mental impairments are not severe, and Plaintiff's supplement would not change the analysis even had the Council accepted it.  In reply (ECF No. 17), Plaintiff argues that only the ALJ can determine the evidentiary impact of Dr. Malik's two statements omitted from its initial review.

The Court will first examine as a threshold matter whether the Appeals Council erred by declining to supplement the record with Dr. Malik's statements, which in turn shapes the totality of the record supporting the ALJ's decision on the merits.

## DISCUSSION

**Additional Evidence**

C.F.R. §404.970 states in pertinent part:[5]

(a)  The Appeals Council will review a case if: […]

> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

(b)  The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence … .

20 C.F.R. § 404.970.

---

[5]    This version of the regulation became effective January 17, 2017, thus prior to the filing of Plaintiff's complaint.

Though Plaintiff emphasizes a different regulation requiring *claimants* to disclose new evidence throughout the review process (20 C.F.R. § 404.1512(a)), Plaintiff overlooks the foregoing limitations on the Council's duty to consider such evidence. According to the plain language of § 404.970, a showing of good cause is a condition precedent to the Council's consideration of new evidence; then, additionally, a claimant must also show a reasonable probability of a different outcome. Here, Plaintiff did not articulate any reason, much less good cause, for her failure to submit Dr. Malik's statements as part of the original record. Remand is not warranted without a showing of good cause. *Benoit v. Berryhill*, No. 4:17 CV 2376 ACL, 2018 WL 4554519, at *8 (E.D. Mo. Sept. 21, 2018) (citing *Stephens v. Shalala,* 50 F.3d 538, 541 (8th Cir. 1995), and *Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008) (prescribing remand upon a showing of new, material evidence and good cause for failure to adduce it sooner)).

Further, the Appeals Council clearly was not persuaded that Dr. Malik's statements would change the outcome. As other courts in the Eighth Circuit have noted, the Appeals Council's determination that additional evidence does not affect the outcome necessarily involves consideration of that evidence in the context of the whole record. *See e.g., Thor S. v. Berryhill*, No. 18-CV-538-NEB-KMM, 2018 WL 7141873, at *5-6 (D. Minn. Dec. 13, 2018), *report and recommendation adopted*, No. 18-CV-538 (NEB/KMM), 2019 WL 368459 (D. Minn. Jan. 30, 2019) (acknowledging this necessary consideration). When the Appeals Council rejects additional evidence, a reviewing court may remand when that rejection contravenes § 404.970. *See e g., Lucas v. Saul*, 2:18-CV-45 CDP, 2019 WL 4221519, at *2 (E.D. Mo. Sept. 5, 2019) (remanding where

Appeals Council failed to consider a new letter by Plaintiff's doctor, dated *after* the ALJ's decision, describing Plaintiff's conditions during the relevant period).  When the Appeals Council does consider new evidence, this Court examines whether the ALJ's decision is supported by substantial evidence on the whole record including the new evidence accepted by the Council.  *Castro v. Berryhill*, No. 4:17-CV-2037-DDN, 2018 WL 3020207, at *9 (E.D. Mo. June 18, 2018) (citing *Stephens*, 50 F.3d at 541).

Here, reviewing the original record without the supplement rejected by the Appeals Council, this Court finds substantial evidence to support the ALJ's determination that Plaintiff's mental impairment is not severe.  In fact, Plaintiff does not challenge that determination on the original record; she only maintains that the inclusion of Dr. Malik's missing statements would tip the weight of evidence to her favor.  This Court disagrees. Even accepting *arguendo* Plaintiff's premise that the Council should have added Dr. Malik's statements to the record – a predicate that the Court rejects – the Court still would find in the supplemented record substantial support for the ALJ's decision.

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides

14

whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

Here, the ALJ found at step two that Plaintiff's mental impairments were not severe.  Consequently, the ALJ did not reach the remaining steps of the inquiry.

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "may not reverse merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."  *Id*. (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126,

15

1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*  The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration."  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Weight of the Evidence**

Plaintiff argues that the record lacks substantial evidence supporting the ALJ's determination that her mental impairments are non-severe.  In support of her position that her mental impairments *are* severe, Plaintiff points to Dr. Malik's omitted statements along with other evidence in the original record documenting Plaintiff's diagnoses of anxiety and depression and her symptoms of distractibility, disorganization, and in one instance irritability.  In response, the Commissioner maintains that the ALJ's decision here is supported by substantial evidence reflecting that Plaintiff's impairments were no more than mild, a result consistent with analogous Eighth Circuit precedent in *Buckner v. Astrue*, 646 F.3d 549, 551 (8th Cir. 2011).  The Court agrees with the Commissioner's position.  Plaintiff's reliance on Dr. Malik's statements and certain excerpts of the original record does not provide a persuasive basis for reversal.

A severe impairment is one that significantly limits a claimant's ability to perform basic work activities and has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(c) and § 404.1509.  The impairment must be established by medical evidence, not just by the claimant's statement of symptoms. *Grim v. Colvin*, 4:12CV01576 AGF NAB, 2014 WL 859840, at *6 (E.D. Mo. Mar. 5, 2014).

16

An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Id.* It is the claimant's burden to establish that his impairment or combination of impairments is severe. *Id.* Severity is not an onerous requirement, but it is also not a toothless standard. *Id.*

In *Buckner*, the psychologist who reviewed the claimant's medical records confirmed that he suffered from anxiety and depression but ultimately concluded that his impairments were not severe because he was only mildly limited in his daily activities, social functioning, and concentration, and he had never had an episode of decompensation.[6] *Buckner*, 646 F.3d at 553. The Eighth Circuit deemed this opinion substantial evidence supporting the ALJ's finding that Buckner's depression and anxiety were not severe. Similarly here, Dr. Maddox reviewed Plaintiff's mental health treatment records and concluded that the objective evidence did not support Plaintiff's subjective claim of severe impairment in that her mental status evaluation markers were largely normal; she is able to care for herself, manage her finances, drive and shop; she reported

---

[6]    Though *Buckner* was decided under an earlier version of the regulations describing paragraph B criteria (20 C.F.R. §404.1520a(c)(3)), the distinction is immaterial here. *Buckner* remains instructive for the general principle that a reviewing psychologist's opinion can constitute substantial evidence of a claimant's ability to function and thus the severity of one's impairments.

no sleep problems or panic attacks; she had not sought counseling; and she responded to medication.  Tr. 67.  The ALJ gave great weight to Dr. Maddox's opinion, as was within her discretion.  This Court defers heavily to the ALJ's findings and, given this record, views the ALJ's decision here as well within the available zone of choice.

Furthermore, even had Appeals Council accepted Dr. Malik's 2014 letter and 2015 medical statement to Plaintiff's employer indicating that Plaintiff suffered from depression and should be transferred from the call center, the substantial evidence in the record would still support the ALJ's decision.  An ALJ is not required to accept every opinion by an examiner but must weigh all the evidence in the record.  *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).  "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."  *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012).  Under the applicable social security regulations,[7] the

---

7       For claims filed before March 27, 2017, the regulations provide that if "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Social Security Administration] will give it controlling weight," and further provide that the Administration "will give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."  20 C.F.R. § 404.1527.

        For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency.  20 C.F.R. § 404.1520c.

opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018).  "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and the Commissioner "may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Id.*

Dr. Malik's 2015 medical statement to Plaintiff's employer, indicating severe depression and difficulty concentrating, contradicts his own treatment notes around that time, which show a single diagnosis of moderate depression and normal, intact mental status markers, including concentration.  Tr. 291, 293.  Further, neither his 2014 letter nor his 2015 medical statement suggest that Plaintiff was unable to work in any capacity or needed a leave of absence; he only recommended that she be transferred out of the call center.  Moreover, the medical statement does not take into account Plaintiff's improvement with treatment, such as reflected in her 2017 treatment notes.

Additionally, Ms. Turay's letter, reporting that counseling sessions with Plaintiff revealed no limitations on her ability to work, is consistent with Dr. Maddox's assessment and further supports the ALJ's finding that Plaintiff's mental impairments are non-severe.  Plaintiff's own function report and testimony belie her claim of severe impairment.  Plaintiff stated that she is able to take care of herself, manage her finances, drive, shop in stores and online, read articles and social media on her computer several hours per day, and plan international travel.

Thus, even considering the omitted evidence if only for the sake of Plaintiff's

argument here, the Court would arrive at the same conclusion, i.e., that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments are non-severe.

## CONCLUSION

The Appeals Council did not commit reversible error in rejecting Plaintiff's additional evidence at that stage of review.  Plaintiff failed to provide good cause for omitting Dr. Malik's statements from the original record and did not demonstrate a reasonable probability of a different outcome had his statements been included, as required by 20 C.F.R. § 404.970.

Upon review of the agency record, the Court concludes that the ALJ's decision on the original evidence was well within the available zone of choice.  Moreover, even had the Appeals Council permitted Plaintiff to supplement the record with Dr. Malik's statements, the Court sees no reasonable probability of a different outcome, particularly insofar as Dr. Malik's statements are inconsistent with his treatment notes and other evidence in the record and do not indicate an inability to work.  Substantial evidence would still support the ALJ's determination.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.  A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September 2020.

21